IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES BERGMAN and
LORI BERGMAN,

    Plaintiffs,

v.

U.S. SILICA, DUPONT and DUPONT TITANIUM,
TECHNOLOGIES, KERR-McGEE CORPORATION
and TRONOX, LLC, f/k/a KERR-McGEE
CHEMICAL, LLC, KRONOS WORLDWIDE, INC.,
and LOTZ TRUCKING,

    Defendants.                                 Case No. 06-cv-356-DRH

**MEMORANDUM & ORDER**

**HERNDON, District Judge:**

**I. INTRODUCTION**

       This matter is before us on a Motion to Remand (Doc. 14), filed by plaintiffs James Bergman and Lori Bergman. Defendants Kerr-McGee Corporation and Kerr-McGee Chemical, LLC, removed this case on the basis of diversity jurisdiction (*see* Doc. 3) with the remaining Defendants consenting to the removal (*see* Docs. 7-10). Plaintiffs, who are Illinois residents, contest Defendants' assertion that complete diversity jurisdiction exists between the parties, arguing that defendant Lotz Trucking – an Illinois corporation with its principal place of business in Illinois

– is a non-diverse party.  All Defendants oppose the remand (Doc. 21), arguing complete diversity jurisdiction does exist, as they believe defendant Lotz Trucking was fraudulently joined to Plaintiffs' suit.  The Court agrees with Defendants and must therefore deny a remand.

## II.  BACKGROUND

Plaintiff James Bergman is an Illinois resident who alleges that he has developed silicosis/pneumoconiosis, causing permanent disability (Doc. 5, ¶ 12). Bergman, together with his wife, Lori, have filed suit against Defendants (Doc. 5). Mr. Bergman brings claims of strict products liability, negligence and breach of implied warranty against Defendants (Doc. 5).  Additionally, Lori Bergman states a claim for loss of consortium (*Id*.).  James Bergman was employed by United Gilsonite Laboratories ("UGL"), where he managed the maintenance department from 1986 to 2002 (*Id*. at ¶¶ 2, 8).  Plaintiffs allege James Bergman's work environment caused him to be exposed to dangerous chemicals, including titanium dust and silica products (*Id*. at ¶ 9).  This exposure allegedly caused James Bergman's debilitating condition.  Plaintiffs further allege that these sand and silicosil products were manufactured by defendant U.S. Silica (*Id*. at ¶ 10).  The titanium dioxide contained in a paint mix was allegedly manufactured and sold to UGL by defendants Kronos, Kerr-McGee (and Tronox) and DuPont (and DuPont Titanium) (*Id*. at ¶11).

Aside from the manufacturer-Defendants, Plaintiffs also initially brought claims against Miller Trucking (also considered a citizen of Illinois).  However,

subsequent to filing their initial Complaint, Plaintiffs learned that defendant Lotz Trucking was a proper party Defendant to the case,[1] so they sought leave to amend their Complaint, adding Lotz Trucking and thereafter voluntarily dismissing Miller Trucking (Doc. 15, p. 1; *see also* Doc. 3, Attachments, p. 2; Doc. 21, Ex. C). Plaintiffs, among other things, allege that Lotz Trucking transported the products at issue from the manufacturers to UGL (Doc. 21).

During pretrial discovery, Lotz Trucking served its responses to Plaintiffs' interrogatories on all parties (Doc. 21, Ex. B). Defendants state they first became aware that Lotz Trucking had been fraudulently joined upon reading these responses, coupled with a review of Lotz Trucking's Answer and Affirmative Defenses to Plaintiffs' Amended Complaint (Doc. 6), as Lotz Trucking stated it was neither the manufacturer or seller of the products at issue (Doc. 3, ¶¶ 18-20). Defendants argue that but for the fraudulent joinder of Lotz Trucking, as it is a non-diverse party, complete diversity jurisdiction would exist, pursuant to **28 U.S.C. § 1332**, making removal proper (*Id.* at ¶ 21).

---

[1] Plaintiffs learned that Lotz Trucking had leased transportation equipment from Miller Trucking (Doc. 14, ¶ 3 and Ex. A).

### III. ANALYSIS

A.   Legal Standard

   1.   Removal

The removal statute, **28 U.S.C. § 1441**, is construed narrowly, and doubts concerning removal are resolved in favor of remand. ***Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 911 (7th Cir. 1993)**. Defendants bear the burden to present evidence of federal jurisdiction once the existence of that jurisdiction is fairly cast into doubt. ***See In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 607 (7th Cir. 1997)**. "A defendant meets this burden by supporting [its] allegations of jurisdiction with 'competent proof,' which in [the Seventh Circuit] requires the defendant to offer evidence which proves 'to a reasonable probability that jurisdiction exists.'" ***Chase v. Shop 'N Save Warehouse Foods, Inc.,* 110 F.3d 424, 427 (7th Cir. 1997)*(citations omitted)*. However, if the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to **28 U.S.C. § 1447(c)**.

The statute regarding diversity jurisdiction, **28 U.S.C. § 1332,** requires complete diversity between the parties plus an amount in controversy which exceeds $75,000, exclusive of interest and costs. Complete diversity means that "none of the parties on either side of the litigation may be a citizen of the state of which a party on the other side is a citizen." ***Howell v. Tribune Entertainment Co.,* 106 F.3d 215, 217 (7th Cir. 1997) (citations omitted)**. In this case, as defendant Lotz

Trucking is also considered a citizen of Illinois, there is not complete diversity among the parties, as Plaintiffs are also Illinois citizens. Plaintiffs, in their Motion to Remand, do not contest any other aspect of the Defendants' assertion of diversity jurisdiction (such as amount in controversy), other than the fact that defendant Lotz Trucking is a proper party and thus, a non-diverse party that destroys diversity jurisdiction. Therefore, the sole matter for determination regarding proper jurisdiction is the issue of fraudulent joinder.

### 2. **Fraudulent Joinder**

If diversity jurisdiction exists among proper parties, it will not be destroyed due to fraudulently joined non-diverse parties. ***Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)(collecting cases)**. In the context of jurisdiction, "fraudulent" is a term of art. ***See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)**. "Although false allegations of jurisdictional fact may make joinder fraudulent . . . in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success whatever the plaintiff's motives." ***Id.* (collecting cases)**. To prove fraudulent joinder, the out-of-state defendant must "show there exists no 'reasonable possibility that a state court would rule against the [in-state] defendant,'" ***Schwartz v. State Farm Mutual Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999)(citing *Poulos*, 959 F.2d at 73))**, or "if a state court has come to judgment, there [is not] any reasonable possibility that the judgment will be reversed on appeal." ***Poulos*, 959 F.2d at 73**. The defendant

bears a heavy burden in this regard. *Id.* This burden can be met by introducing uncontradicted evidence. **See *Faucett v. Ingersoll-Rand Mining & Machinery Co.*, 960 F.2d 653, 655 (7th Cir. 1992)(where uncontradicted affidavit of the non-diverse defendant attesting to facts showing that the plaintiff could not establish a cause of action against him under Illinois law was sufficient to establish fraudulent joinder)**.

**B.   DISCUSSION**

Plaintiffs bring three separate counts against Lotz Trucking for strict products liability, negligence and breach of implied warranty. Mrs. Bergman also brings a claim against all Defendants for loss of consortium, which hinges upon a finding of liability on any of the previous three counts (*see* Doc. 5). As these are state law claims, Illinois substantive law applies. **See *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)**.

   **1.   Products Liability**

Count XVI of Plaintiffs' First Amended Complaint (Doc. 5, ¶¶ 78-81) alleges a claim based upon a theory of strict products liability, brought by James Bergman against Lotz Trucking. Specifically, he alleges, "Lotz Trucking, the Lesee of Roger Miller Trucking . . . was engaged in the delivery, distribution and sale of silica products including sand and silicosil (hereinafter "silica")" (*Id*. at ¶ 79). Therefore, Plaintiff claims Lotz Trucking is strictly liable in tort because:

      i. Defendants knew or should have known at the time the silica in question was placed in the stream of commerce that it was unreasonably dangerous and defective in that it could cause silicosis;

     ii. The above-described defect existed at the time the silica left the control of Lotz Trucking;

    iii. The silica was accompanied by inadequate warnings of the danger presented by the silica;

    iv. Defendant Lotz Trucking knew of the propensity of the silica to cause silicosis if inhaled prior to the time it produced the silica which eventually injured plaintiff's lungs, and

     v. The silica reached plaintiff in the same condition as when it left the control of defendant Lotz Trucking.

(*Id*. at ¶ 80),

Defendants have submitted evidence in support of both their Notice of Removal and in their opposing Response to Plaintiffs' Motion to Remand, to show Lotz Trucking neither manufactured, distributed nor sold the silica as alleged in the Complaint. Therefore, Defendants argue that Plaintiffs cannot properly bring a strict products liability claim against Lotz Trucking under Illinois law. The substantiating evidence consists of Lotz Trucking's responses to Plaintiffs' interrogatories, its affirmative defenses made in its Answer, and an affidavit of Kevin Kuntz, who is currently the operations manager of Lotz Trucking. In his affidavit, Kuntz states that Lotz Trucking only provided transportation services – it did "not buy, sell, wholesale, retail or manufacture any silica and/or titanium dioxide products" (Doc. 21, Ex. D, ¶ 2).

Regarding the circumstances at issue in Plaintiffs' Complaint, Kuntz attests that Lotz Trucking was contacted by defendant U.S. Silica because it had an order which needed to be delivered to UGL (James Bergman's employer) (*Id*. at ¶ 3). Lotz Trucking's function was to deliver the product ordered by UGL from U.S. Silica to UGL. Kuntz provides a detailed description of the receipt, transport and delivery process of silica as follows:

> One of our trucks then travels to the U.S. Silica facility where bags of silica sand are present on pallets which are shrink-wrapped. Employees of U.S. Silica then load these shrink-wrapped pallets of silica sand onto one of our trucks. Lotz Trucking does not buy any of the silica sand. Lotz Trucking has no involvement in what type or brand of silica sand is selected by [UGL] from U.S. Silica. The bags of silica sand are then hauled by Lotz Trucking to the [UGL] facility in Jacksonville, Illinois. [UGL] then pays Lotz Trucking only for delivery charges. It is my understanding that [UGL] pays U.S. Silica directly for the purchase of the silica sand itself. Lotz Trucking never takes ownership of any of the silica sand hauled from U.S. Silica to [UGL]. Lotz Trucking plays no role in the determination of the price of silica sand which is sold by U.S. Silica to [UGL]. U.S. Silica uses a forklift to load the pallets of silica sand onto our trailer. Likewise, [UGL] uses a forklift to unload our trailer. Thus, Lotz Trucking does not handle these materials . . . . Lotz Trucking does nothing to the pallets of silica sand bags except transport them from one location to another. Lotz Trucking does not design, test, package, market, advertise, label, alter or modify the bags of silica sand or any other silica product in issue. Lotz Trucking has no knowledge as to how the silica sand is used at [UGL] and does not have knowledge of which individuals, if any, may ultimately come into contact with silica sand at [UGL].

(Doc. 21, Ex. D, ¶¶ 3-9).

Liability, in a products liability action, can be imposed on manufacturers of the product at issue, as well as "all persons in the distributive chain . . . including suppliers, distributors, wholesalers and retailers." ***Hammond v. North American Asbestos Corp.*, 97 Ill.2d 195, 206, 454 N.E.2d 210, 216 (1983)(citing *Thomas v. Kaiser Agricultural Chemicals*, 81 Ill.2d 206, 214, 407 N.E.2d 32 (1980))**; ***see also Mechanical Rubber and Supply Co. v. Caterpillar Tractor Co.*, 80 Ill. App. 3d 262, 264, 399 N.E.2d 722, 723 (Ill. Ct. App. 1980)**. The logic behind the imposition of this strict liability derives from the fact that both manufacturers and parties within the "distributive chain" theoretically have the ability, by virtue of their involvement in the marketing process, "to exert pressure on the manufacturer to enhance the safety of the product." ***Id.* (citing *Dunham v. Vaughan & Bushnell Manufacturing Co.*, 42 Ill.2d 339, 344, 247 N.E.2d 401 (1969))**. However, along the lines of this logic follows the notion that if the party merely provides a service in relation to the manufacture and sale of the product at issue, but this "relationship is peripheral and not directly related to the distributive process," such peripheral party cannot be subjected to strict products liability. ***Mechanical Rubber and Supply Co.*, 80 Ill. App. 3d at 264, 399 N.E.2d at 723**. This is true even if the services provided by the peripheral party required it to exercise reasonable care in the performance of that service. ***Id.*** Illinois law recognizes a transportation company (among others) as one such type of peripheral party. ***Id.*; *see also Milford v. Commercial Carriers, Inc.*, 210 F. Supp. 2d 987,**

990 (N.D. Ill. 2002); *Alvarez v. Koby Machinery Co., Ltd.*, 163 Ill. App. 3d 711, 716, 516 N.E.2d 930, 933 (Ill. Ct. App. 1987). Moreover, Defendants offer a case, although not binding precedent, that is very similar to the situation at hand, which found that a transportation company was not liable in a products liability action.

The recent case cited by Defendants is from the United States District Court for the Southern District of Mississippi. *Lundy v. Cliburn Truck Lines, Inc.*, 397 F. Supp. 2d 823 (S.D. Miss. 2005). In *Lundy*, the plaintiff suffered from a condition allegedly caused by exposure to a carcinogen known as benzene, an ingredient in some gasolines, while she was working at various Conoco convenience stores for 13 years. *Id.* at 825. Among the parties she filed a products liability suit against was defendant Cliburn Tank Lines for allegedly supplying and distributing the gasoline at issue. *Id.* As in this case, the *Lundy* plaintiff stated claims of strict products liability, negligence and breach of warranties. *Id.* at 826. The case was removed to the federal district court by the defendants on the basis of diversity, even though Cliburn Tank Lines was a non-diverse party. The *Lundy* defendants, also like the instant matter, claimed Cliburn Tank Lines was fraudulently joined to defeat diversity of citizenship. *Id.* The plaintiff filed for remand, hence the district court examined the fraudulent joinder issue.

The *Lundy* court analyzed the plaintiff's claims against Cliburn Tank Lines, reciting the fraudulent joinder standard that "[r]emoval is proper 'if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no

reasonable basis for predicting that the plaintiff might establish liability [under state law] on that claim against the instate defendant.'" **Id. at 827 (citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 290 (5th Cir. 2000))**. Further, the district court recognized that the plaintiff could not merely state conclusory allegations of wrongful behavior to make sufficient showing that the non-diverse party was *not* fraudulently joined, as external evidence, such as affidavits, could be used to prove otherwise. **Id.**

In order to oppose the remand, the *Lundy* defendants submitted the sworn affidavit of Donald Cliburn, the President of Cliburn Tank Lines, attesting to the following: Cliburn Tank Lines "had no control over the employees or premises to which the gasoline was delivered . . ." and did not "buy, sell, wholesale, retail or manufacture gasoline products, and that it did not design, test, package, market, advertise, label, alter or modify the gasoline in issue . . . ." **Id. at 828**. Noting that the plaintiffs had offered no evidence to rebut the statements made in the Cliburn affidavit, other than what was alleged in the complaint, the *Lundy* court found that the substance of the affidavit must be taken as true. **Id.** The *Lundy* court determined that Cliburn Tank Lines was merely the deliverer of gasoline from seller to buyer, had nothing to do with the manufacture or sale of the product and thereby liability could not be imposed upon the transportation company. Thus, Cliburn Tank Lines was found to be fraudulently joined, was therefore dismissed and the remand denied. **Id.**

Countless parallels run between ***Lundy*** and this case. Though it is not binding precedent, as it generally applies the same standard for determining fraudulent joinder and because the theory behind the imposition of products liability is somewhat universal regardless of the state, the Court finds the ***Lundy*** case insightful. Further, Illinois law supports the finding in ***Lundy***, as the Illinois courts have previously recognized that transportation companies serving merely in a peripheral relationship with the product at issue, cannot be held liable in a products liability action. ***See, e.g., Mechanical Rubber and Supply Co., 80 Ill. App. 3d at 264, 399 N.E.2d at 723***. In their memorandum in support of the Motion to Remand (Doc. 15), Plaintiffs have failed to cite any case law supporting their theory that a transportation company should be held liable for being part of the manufacturing and distribution chain. Instead, the cases cited by Plaintiffs to support their strict product liability claim against Lotz Trucking merely stand for the proposition that product liability can be imposed upon a manufacturer, seller or distributor (Doc. 15, p. 2, citing ***Hammond, 97 Ill.2d at 206, 454 N.E.2d at 216; Thomas, 81 Ill.2d at 214, 407 N.E.2d at 32***).

Even more detrimental to Plaintiffs' position is their failure to reply to Defendants' arguments, Yet, what is most crucial is the fact that Plaintiffs have offered no evidence whatsoever to rebut the assertions made by Lotz Trucking. In other words, Plaintiffs attempt to merely rest on their allegations of wrongdoing and liability in order to show Lotz Trucking has not been fraudulently joined to this

action. This will not suffice. Therefore, as in *Lundy*, the Court will take the averments stated in the affidavit of Kevin Kuntz and Lotz Trucking's Responses to Plaintiffs' Interrogatories as true.

The evidence, therefore, clearly shows that Lotz Trucking is not involved, nor responsible for the manufacture or retail of the silica product at issue. Nor does Lotz Trucking determine the distribution of the silica. It simply, when needed, provides a service to get the product from Point A to Point B. In fact, Lotz Trucking does not stand to make any financial profit from the sale of the silica as it is paid only for the transportation services it provides. Lotz Trucking has no control or influence over the marketing of the silica. It is also not in a position to have knowledge of the safety and/or handling of the silica (other than its transportation), as it neither loads or unloads the product. These tasks are left to the employees of U.S. Silica and UGL. In sum, Lotz Trucking, in this instance, is merely a peripheral party – not able to likely press upon the manufacturer to enhance the safety of this product. Therefore, the Court finds no reasonable possibility that Plaintiff can prevail on a strict products liability claim against Lotz Trucking in an Illinois state court.

**2. Negligence**

In their memorandum, Plaintiffs assert that the basis for liability in negligence is based upon the "duty of a manufacturer or seller of a product . . . to exercise reasonable care in the distribution of and warnings given concerning the use of the product" (Doc. 15, p. 3). Thus, there must be an existing duty compelling Lotz

Trucking to do something – in this case, to use reasonable care in distributing the silica and also to provide warning regarding the use of the silica. Determining whether such duty exists is a question of law, requiring the Court to examine such factors as: (1) whether it is reasonably foreseeable that the conduct of Lotz Trucking could cause injury to another in transporting the silica; (2) the likelihood of any injury occurring due to Lotz Trucking's transport of the silica; (3) the extent of the burden imposed upon Lotz Trucking to guard against such injury; and (4) the resulting consequences if such burden were imposed upon Lotz Trucking. ***See City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill.2d 351,391, 821 N.E.2d 1099, 1125 (Ill. 2004)**.

Even Plaintiffs' own legal authority makes it evident that Lotz Trucking had no duty in this instance. The law cited by Plaintiffs imposes such duty upon a *manufacturer* or *seller* – not a peripheral transportation company. Plaintiffs have not offered supporting law or other legal argument to prove otherwise. Looking at the factors regarding the existence of a duty, Lotz Trucking cannot be reasonably expected to anticipate the injury as caused in this case – otherwise, it would be expected to anticipate the injuries for any and every product it may transport in the course of its business. That is clearly *un*reasonable and would present too great of a burden, especially when considering the fact that Lotz Trucking has no knowledge of what UGL intended to do with the silica once it was unloaded from its trucks by UGL employees. For these reasons, coupled with Plaintiffs' failure to show why such

duty should exist, other than merely resting on their allegations and a couple of basic case cites regarding negligence in a products liability action, the Court finds no reasonable possibility that Plaintiff could state a successful claim of negligence against Lotz Trucking in an Illinois state court.

### 3. Breach of Implied Warranty

Again, in their supporting memorandum, Plaintiffs specifically state "[a] defendant in a breach of warranty action must be a *seller* . . ." (Doc. 15, p. 3)(emphasis added). As evidence has already proven Lotz Trucking is not a seller of silica in any way, the Court finds no reasonably possibility that Plaintiff to prevail in Illinois state court against Lotz Trucking based upon a breach of implied warranty theory.

### 4. Loss of Consortium

James Bergman's wife, Lori Bergman, states one count against all Defendants, for loss of consortium for her husband's injuries allegedly caused by the silica, which hinges upon a finding of liability. Thus, as the Court has found no reasonable possibility that all of the Counts stated against Lotz Trucking would be successful in an Illinois state court, it follows that there is no reasonable possibility that Mrs. Bergman's loss of consortium claim would be successful.

### 5. Federal Preemption

The Court notes that Defendants have also asserted, in their opposing Response (Doc. 21, pp. 12-15), that even if Plaintiffs could state viable claims in

Illinois court against defendant Lotz Trucking, such claims were preempted by the Federal Aviation Administration Authorization Act. **49 U.S.C. § 14501**. As the Court has already found that Lotz Trucking was fraudulently joined, it will not examine the preemption issue.

### IV.  CONCLUSION

As the Court has found under the legal standard as stated in ***Poulos***, that there exists no reasonable possibility that an Illinois state court would rule against Lotz Trucking on either Plaintiffs' strict products liability, negligence, breach of implied warranty or loss of consortium claims, it thereby concludes Lotz Trucking has been fraudulently joined in this action. Based upon this conclusion, Lotz Trucking should be dismissed as a party defendant in this case. Without Lotz Trucking as a defendant, there exists complete diversity of citizenship between the parties. Accordingly, Plaintiffs' Motion to Remand (Doc. 14) is hereby **DENIED**.

**IT IS SO ORDERED.**

Signed this 17th day of October, 2006.

/s/        David RHerndon
**United States District Court**